# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00426-CR

**John Bailey Lasater, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. 2022764, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

# M E M O R A N D U M   O P I N I O N

Appellant John Bailey Lasater was indicted for unlawful use of a pen register or trap and trace device.[1] *See* Tex. Pen. Code Ann. § 16.03 (West 2003). After his motion to suppress was denied, he pleaded guilty and was sentenced to twenty months' confinement. The trial court suspended imposition of the sentence and placed him on community supervision for five years. In his sole issue, he contends that the trial court erred by denying his motion to suppress evidence obtained during what he contends was an individual's criminal trespass in his home. *See id*. § 30.05

---

[1] It is a state jail felony to knowingly install or use a pen register or trap and trace device to record or decode electronic or other impulses for the purpose of identifying telephone numbers dialed or otherwise transmitted on a telephone line. Tex. Pen. Code Ann. § 16.03 (West 2003). There are several statutory affirmative defenses that are not applicable in this case. *See id*.

(West Supp. 2005) (criminal trespass); *see also* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005). We will affirm the judgment.

**BACKGROUND**

For two years, Terri Howell and appellant lived on separate sides of a duplex. They became good friends, but were not involved romantically. Appellant gave Howell a key to his house. He testified that she had a key because she cleaned his house occasionally to make extra money, but denied ever giving Howell general authorization to enter his house. Howell testified that appellant gave her the key to feed his cat when he was out of town and to use when she cleaned his house. According to Howell, appellant also allowed her to use his computer to access the internet and to burn compact discs. During the two years they were neighbors, she entered his house approximately fifteen to twenty times in order to use his computer. She explained that appellant never told her that she was not welcome in certain areas of the house. Rather, he told her that she did not need to request permission to go into his house if she ever needed to use the computer, clean his house, or find her cat, but "just to go right ahead." Furthermore, Howell's cat would frequently enter appellant's garage through his cat door in order to eat the cat food appellant left for his own cat. Howell's cat received medication, and she testified that appellant "had said on several times that if I needed to find my cat—a lot of times he was in the garage or in his house—if I needed to give my cat medicine," she could enter the garage or house to find her cat.

In September 2000, approximately three months after Howell moved next door to appellant, she began to suspect that he was listening to her phone calls. Appellant seemed to know

2

things about Howell that she had not told him, so she started to become more conscious of what information she was discussing on the phone. However, she only had suspicions based on his extra knowledge; she had no proof that appellant was doing anything improper. In January 2002, Howell did a "test phone call" in which she told a friend that she was pregnant in order to see if appellant was listening. Shortly after the call, appellant invited her to dinner and told her to order anything she was "craving." Howell concluded that "either it was just a coincidence that he happened to say the word crave, or he actually had been listening to the phone calls. So I pretty much thought that maybe he had been listening to my phone calls by using that choice of words after I had just pretended to tell my friend that I was pregnant." The next month, a friend suggested that Howell speak with another friend who worked for the Department of Public Safety. The DPS employee ran a background check on appellant and offered to speak to appellant for Howell, but the record does not include any other evidence of an investigation into appellant's activities at that point. Howell continued to socialize with appellant because, although she thought he had access to her phone, she did not have proof.

In May and June, Howell observed notations on appellant's calendar indicating that he may have been stalking her. On July 9, Howell called appellant and received permission to use his computer to burn some compact discs. According to Howell, appellant also told her that if she needed to find her cat to administer medication, she should check his garage because he had seen Howell's cat "hanging out" there. Howell went to appellant's house and looked in the garage but did not find her cat. She proceeded to his bedroom to use his computer. While using his computer, Howell saw his calendar open with certain dates marked. She wanted to write down what dates were

3

marked, so she began looking for a piece of paper and pencil. Explaining that appellant had previously given her permission to look in the desk drawer to find paper or a pencil, she opened the desk drawer. She found some paper and "flipped through something" before discovering a deposit slip from her checkbook in his drawer. She then recalled that a few days earlier, appellant had opened a cabinet on his desk while showing her something on his computer. Howell had seen an old picture of herself, taken by her previous roommate, inside the cabinet. Howell also noticed that appellant had circled certain days on his calendar that she "knew was a reflection" of her. Howell recognized the circled days as times when she was on a date or had a date at her house. Howell testified that she had never given appellant a bank deposit slip or photograph of herself, and that seeing these things made her feel sick. While the compact disc was burning, she decided to look in appellant's attic. Howell testified that appellant never told her she could not access the attic, but had suggested that he might be able to run a cable line through his attic to her house so that they might share internet access. Thus, she stated that part of her curiosity was related to seeing "how his attic was like" to assess the possibility of appellant's suggestion.

At the top of the ladder in the attic, Howell discovered a tape recorder, caller identification box, a legal pad full of information, and ear phones. On the legal pad, appellant had written information about Howell's friends, family, ex-boyfriends, and current boyfriend. Howell did not touch anything in the attic. She returned to her house, retrieved her digital camera, and went back to appellant's house with her boyfriend and took pictures of what she saw in the attic. Subsequently, a search warrant was issued based on the information and pictures Howell provided.

4

Appellant filed a motion to suppress the evidence gathered in the search and Howell's testimony, alleging that the evidence was the "fruit of the poisonous tree" discovered as the result of Howell's criminal trespass in his house and that the search warrant was based on knowledge illegally gained by Howell as a result of her trespass. *See* Tex. Code Crim. Proc. Ann. art. 38.23; *see also* Tex. Pen. Code Ann. § 30.05. The motion was denied, and appellant pleaded guilty. The court sentenced appellant to twenty months' confinement but suspended imposition of the sentence and placed him on community supervision for five years. This appeal followed.

**DISCUSSION**

**Standard of review**

A trial judge is the sole trier of fact at a suppression hearing and evaluates witness testimony and credibility. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) (citing *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)). Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony because the trial court observes the demeanor and appearance of a witness. *State v. Gray*, 158 S.W.3d 465, 466-67 (Tex. Crim. App. 2005). When we review a trial court's ruling on a motion to suppress, we give great deference to the court's determination of historical facts while reviewing its application of the law de novo. *Torres*, 182 S.W.3d at 902; *Maxwell*, 73 S.W.3d at 281. Because no findings of fact were filed in this case, we view the evidence in a light most favorable to the trial court's ruling and assume that the court made implicit findings of fact that support its ruling, as long as the findings are supported by the record. *Torres*, 182 S.W.3d at 902 (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

5

If the trial judge's decision is correct on any theory of law applicable to the case, the decision will be sustained. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (citing *Romero*, 800 S.W.2d at 543).

**Article 38.23 and criminal trespass**

Appellant contends that the search warrant for his house was unlawful because the information contained therein was illegally obtained by Howell's criminal trespass. *See Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980). He argues that Howell's testimony and the physical evidence obtained after the search warrant was issued should be suppressed pursuant to article 38.23 of the code of criminal procedure.

Article 38.23 provides, "No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. art. 38.23(a). "Article 38.23(a) means what it says: that evidence illegally obtained by an 'officer or other person' should be suppressed." *Jenschke v. State*, 147 S.W.3d 398, 400 (Tex. Crim. App. 2004) (quoting *State v. Johnson*, 939 S.W.2d 586, 588 (Tex. Crim. App. 1996)).

A person commits the offense of criminal trespass if she enters or remains on or in property of another without effective consent or she enters or remains in a building of another without effective consent and she: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so. Tex. Pen. Code Ann. § 30.05 (a)(1). "Notice" is statutorily defined and

6

may include oral or written communication by the owner or a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden. *See id*. § 30.05 (b)(2).

**Analysis**

The State urges that it could not prosecute Howell for criminal trespass because there is no evidence that she had notice that entry was forbidden. *See id*. § 30.05. Appellant responds that homeowners should not be required to post "no trespassing" signs in various areas in their homes in order to exclude individuals who have limited authority to be there. The success of appellant's motion initially hinges on whether Howell entered or remained on or in appellant's property without effective consent. *See id*. It is undisputed that appellant gave Howell permission to enter his house in order to use his computer—which is precisely what she was doing when she noticed the dates. Furthermore, appellant gave Howell general consent to be in his house and garage in order to look for her cat. Howell testified that on other occasions, she had found her cat in appellant's garage and spare bedroom. Appellant asserts that Howell's entry into the attic constituted criminal trespass because the attic was eight feet high and the ladder was ten feet away; thus, her cat could not have been in the attic.

There was no evidence that Howell had ever been told that she was not permitted to be in appellant's attic. Rather, the evidence suggests that Howell had general permission—effective consent—to be in appellant's house on July 9 in order to use his computer and look for her cat. Although appellant urges that he did not give her permission to look for her cat that day, and she

could not have been looking for her cat in the attic, Howell testified that appellant specifically told her she should check the garage for her cat if she needed to administer medication to him. Furthermore, Howell testified that one reason she was curious about the attic was due to appellant's suggestion that they could share internet access between their duplexes.

The trial judge is the sole trier of fact. *Maxwell*, 73 S.W.3d at 281. He evaluates witness testimony and credibility, and is entitled to believe or disbelieve all or any part of a witness's testimony because he observes the demeanor and appearance of a witness. *Gray*, 158 S.W.3d at 466-67. Accordingly, viewing the evidence in a light most favorable to the trial court's ruling and assuming that the court made implicit findings of fact in support of its ruling based on the evidence, *see Romero*, 800 S.W.2d at 543, we hold that the court, as the sole trier of fact, could have reasonably found that Howell had effective consent to be in appellant's house, including his attic, from which she was not restricted access. Therefore, we need not determine if a violation of the criminal trespass statute invokes article 38.23 because it was not implicated in this case.[2] *See Phillips v. State*, 161 S.W.3d 511, 515 (Tex. Crim. App. 2005) (because no laws were violated, article 38.23 was not implicated and trial judge did not err in denying motion to suppress; court did not reach issue of whether violation of criminal trespass statute invokes article 38.23). We overrule appellant's sole issue.

---

[2] Moreover, we note that the fact that Howell returned to her house and retrieved her camera before entering appellant's house the second time does not aid appellant's arguments because the search warrant could have been issued based on her description to the police of what she initially saw in appellant's attic, even if she did not have photographs.

**CONCLUSION**

Having overruled appellant's issue, we affirm the judgment of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   July 7, 2006

Do Not Publish